# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHESTER PHIL LLOYD COLE,

        Petitioner,                                    Case Number: 2:08-CV-15234

v.                                                          HON. LAWRENCE P. ZATKOFF

MARY BERGHUIS,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Chester Phil Lloyd Cole's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, challenges his conviction for first-degree premeditated murder. For the reasons that follow, the Court denies the petition.

## I. Facts

Petitioner's conviction arises from the drowning death of his wife, Angela Cole. The prosecution presented evidence that, on the night of March 30, 2002, Petitioner and his sister, co-defendant Mary Ellen Rose, borrowed Petitioner's girlfriend's car and lured Mrs. Cole to a river to go fishing, where Petitioner dragged her to the water and held her head under water, killing her.

Mrs. Cole's body was discovered the following day by someone walking along the riverbank. Police Detective Timothy Gonzalez testified that he interviewed Petitioner on April 2, 2002, and that Petitioner claimed to know nothing about Mrs. Cole's death. On May 2, 2003, over one year after Mrs. Cole's death, Detective Gonzalez again interviewed Petitioner. During this interview,

Petitioner admitted that, on the night of the killing, he and his sister had convinced Mrs. Cole to go fishing with them. They drove to the river, and walked to a bridge to fish. He and Mrs. Cole began arguing about a divorce, with Mrs. Cole denying Petitioner's request for a divorce. Petitioner told Detective Gonzalez that he snapped, grabbed Mrs. Cole, dragged her into the water, pushed her into the water by the neck, and held her head under water until she stopped moving.

Several witnesses testified that, over the years, Petitioner had expressed a desire to kill Mrs. Cole. Additionally, Petitioner's girlfriend testified that, a few weeks after Mrs. Cole's murder, Petitioner told her that they needed to sell her car because of what it had been used for.

Petitioner did not testify in his own defense.

## II. Procedural History

Following a bench trial in Jackson County Circuit Court, Petitioner was convicted of first-degree premeditated murder. On February 11, 2004, he was sentenced to life imprisonment without the possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. Is defendant entitled to a remand where the trial judge failed to make sufficient findings with respect to defendant's defense that he acted in the heat of passion?

II. Is the evidence insufficient to support the conviction of first-degree premeditated murder and has defendant been denied due process of law?

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Cole*, No. 254186 (Mich. Ct. App. July 14, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied

leave to appeal. *People v. Cole*, 474 Mich. 977 (Mich. Dec. 27, 2005).

Petitioner filed a motion for relief from judgment in the trial court, raising the following claims:

> I. Defendant's constitutional right to a trial by jury was violated.
>
> II. Defendant was denied his 6th Amendment constitutional right to effective assistance of appellate counsel.

The trial court denied the motion. *People v. Cole*, No. 03-564-FC (Jackson County Cir. Ct. Dec. 19, 2006).

Petitioner filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Cole*, No. 280413 (Mich. Ct. App. Apr. 3, 2008); *People v. Cole*, 482 Mich. 1029 (Mich. Oct. 27, 2008).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the following claims:

> I. Defendant is entitled to a remand where the trial judge failed to make sufficient findings with respect to defendant's defense that he acted in the heat of passion.
>
> II. The evidence is insufficient to support the conviction of first-degree murder, premeditated murder, and the defendant has been denied due process of law
>
> .
>
> III. Defendant's constitutional right to a trial by jury was violated by counsel.
>
> IV. Defendant was denied his 6th Amendment constitutional right to effective assistance of appellate counsel.

### III. Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Analysis

### A. Sufficiency of Trial Court's Findings of Fact

Petitioner claims that he is entitled to habeas relief because the trial court made insufficient findings of fact and conclusions of law.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'"

4

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In a [federal] habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981), *cert. denied*, 455 U.S. 1024 (1982).

Petitioner's claim that the trial court failed to make sufficient findings of fact is based solely upon Michigan Court Rules requiring a judge to make specific findings of fact and conclusions of law. *See* M.C.R. 2.517, 6.403. Consequently, Petitioner's claim is not cognizable on federal habeas corpus review. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus . . . reaches only convictions obtained in violation of some provision of the United States Constitution.").

### B. Sufficiency of the Evidence

Next, Petitioner argues that insufficient evidence was presented to establish that the killing was premeditated. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been

observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

The Michigan Court of Appeals held that sufficient evidence was presented to show premeditation, reasoning:

> A challenge to the sufficiency of the evidence from a bench trial requires this Court to determine, when viewing the evidence in the light most favorable to the prosecution, "whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v. Wardlaw*, 190 Mich. App. 318, 319; 475 N.W.2d 387 (1991). Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to sustain a conviction of first-degree, premeditated murder.
>
> A number of factors can be considered to determine if a killing was premeditated; the factors may include:
>
> (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted. *People v. Plummer,* 229 Mich. App. 293, 300; 581 N.W.2d 753 (1998).
>
> Based on this evidence, it is clear that the relationship between defendant and his wife was strained. It was common knowledge that he wanted a divorce, and he told people that he wanted to kill her because she refused to divorce him. Also, before the crime was committed, defendant borrowed a car ostensibly to go to a store but instead he went to pick up his wife, from whom he was estranged, to go fishing, and defendant would not let a family friend tag along on the trip. After the crime, defendant hid evidence (including his shoes), suggested the car be sold, and lied to detectives about the information he had. Finally, the killing itself was at defendant's own hands. He held the victim face-up under water until she stopped moving and then left her floating in the river.
>
> Viewing this evidence in the light most favorable to the prosecution, a reasonable trier of fact could determine that defendant made a plan to kill his wife before he picked her up to go fishing. Even if the trial court believed that the defendant and his wife fought about a divorce at the river as defendant claims, the evidence suggests that defendant planned to kill his wife before he brought her to the river on the evening in question. Therefore, . . . the evidence was sufficient for a finding of premeditation.

*Cole*, slip op. at 2-3.

Petitioner has not shown that any of the factual determinations made by the court of appeals were erroneous. The Court of Appeals, although not specifically citing the *Jackson* standard, clearly applied case law utilizing that standard. Therefore, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to sustain the conviction did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

## C. Right to Jury Trial

In his third claim, Petitioner argues that he did not voluntarily waive his right to a jury trial. Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

The right to a trial by jury is a fundamental right, a cornerstone of the American system of criminal justice, which is enshrined in the Constitution. *See Duncan v. Louisiana*, 391 U.S. 145 (1968). It is a right that may be waived, if such waiver is knowing, voluntary and intelligent. *Patton v. U.S.*, 281 U.S. 276, 312-13 (1930). In *Lott v. Coyle*, 261 F.3d 594, 615 (6th Cir.2001), the Sixth Circuit set forth the level of knowledge a defendant must have to validly waive a right to a jury trial:

7

A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. *See* [*United States v. Martin*, 704 F.2d 267, 273 (6th Cir.1983)]. Although a defendant need not have a detailed, technical knowledge of this right, "[a] defendant is [deemed] sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, [that] he may participate in the selection of the jurors, [that] the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273. We did not, however, adopt a mandatory rule requiring trial courts to interrogate defendants prior to accepting a jury trial waiver, but instead, offered a "suggestion" that district courts personally inform defendants of the "benefits and burdens of jury trials on the record prior to accepting a proffered waiver." *Id.* at 274.

*Id.* at 615.

In support of his claim that the waiver was not voluntary, Petitioner cites to the following portion of the trial court transcript:

> Def. counsel: Judge, I did have an issue of the waiver of trial by jury. I know we talked about this Friday. I consulted with Mr. Cole about that on Friday and then again over this weekend. And then this morning, he's had the opportunity to talk to his sister, Chris, who is here from Saginaw. And the officers did allow us some time to talk about this, this morning.
>
> He and I, as well as the Prosecution, have signed that form and I understand that's –
>
> Chet, that's what you would like me to ask the Court to do. Is that correct?
>
> Defendant: Yes.
>
> Def. counsel: And I ask that the Court –
>
> The Court: Well, we told you to let us know by 3 o'clock last Friday, so we wouldn't have to call in jurors. I've called in jurors, so let's have a jury trial.
>
> Def. counsel: Thank you very much.
>
> The Court: Okay. Bring them down.
>
> The Bailiff: Okay.

(At 8:40 a.m., off the record; back on the record at 8:47 a.m.)

The Court: Okay. We're back on the record on People versus Chester Phil Lloyd Cole; 03-564.

And, Mr. Cole, raise your right hand, please, to be sworn. Do you solemnly swear or affirm to tell the truth, the whole truth and nothing but the truth, so help you God?

Defendant: I do.

The Court: . . . Do you understand you're entitled to have a jury trial in this matter?

Defendant: Yes, sir.

The Court: Do you understand we choose 12 people out of the community and those 12 people would decide your fate, rather than you having just me decide your fate? Do you understand that?

Defendnat: Yeah.

The Court: And are you willing to have me decide it then, rather than having a trial by jury?

Defendant: I'd rather have you, sir.

The Court: Okay. All righty. We'll proceed then, have a nonjury trial.

Def. counsel: Judge, may I ask some questions of Chester?

The Court: Sure.

Def. counsel: Now, Chester, you and I have talked about this issue, oh, a number of times in the last week, haven't we, Chester?

Defendant: Yes, sir.

Def. counsel: Both at the county jail and then when you were over here at court Friday. Is that correct?

Defendant: Yeah.

Def. counsel: And did I give you the time to think about this and to give it every consideration?

9

Defendant: Yes, sir.

Def. Counsel: Did we talk about the right to appeal from a bench trial, because you were worried about that, if you were convicted?

Defendant: Yes.

Def. counsel: Okay. And did you also talk to your sister, Chris, about that?

Defendant: Yes, sir.

Def. counsel: And did you talk with other people, in addition to myself and Chris, about that?

Defendant: Yes.

**Def. counsel: You're comfortable with this and this is what you want to do. Is that correct?**

**Defendant: No.**

Def. counsel: Have I or anyone else made any promise to you about what Judge Nelson's verdict would be or might be?

Defendant: No.

Def. counsel: Has anybody threatened you by saying that, "If you don't do this, then I'm going to do this to you or to somebody else"?

The Court: No.

Def. counsel: Did anybody tell you that, if you didn't have a bench trial, you wouldn't get a fair trial?

Defendant: No.

Def. counsel: Thank you, Judge.

The Court: You also understand I've made no promises with regards to this. Do you understand that?

Defendant: Yes, sir.

The Court: Okay. All right.

Tr., 1/12/04 at 10-14 (emphasis supplied).

Petitioner argues that the portion of this colloquy appearing in bold above indicates that he did not wish to waive his right to a jury trial. Petitioner raised this claim in his motion for relief from judgment in the trial court. The trial court denied the motion. The trial judge stated that he listened to the tape recording of the colloquy between Petitioner and his counsel. He held that Petitioner did not answer "no" to the question whether he wanted to waive his right to a jury trial. The trial court held that Petitioner clearly stated "Yep," and that the transcript was incorrect on this point. The trial court's factual finding on this point is presumed correct and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has presented no clear and convincing evidence to rebut this finding of fact. Therefore, it is presumed correct.

The record shows that Petitioner had an adequate understanding of his jury trial right and the capacity to understand the implications of the waiver of that right. He was informed that he had a right to a jury composed of twelve community members and that a bench trial would not result in a more lenient trier of fact. Thus, the Court finds that the waiver was voluntary, knowing and intelligent.

### D. Alleged Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that appellate counsel was ineffective in failing to raise the claim on direct appeal that Petitioner's right to a jury trial was violated.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client

11

> would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As discussed above, Petitioner has failed to show that the claim that he was denied his right to a trial by jury was potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise this claim on direct appeal.

## V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is

**DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

                S/Lawrence P. Zatkoff
                LAWRENCE P. ZATKOFF
                UNITED STATES DISTRICT JUDGE

Dated: November 22, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 22, 2010.

                S/Marie E. Verlinde
                Case Manager
                (810) 984-3290